1
2
3
4

# UNITED STATES DISTRICT COURT

5

## EASTERN DISTRICT OF CALIFORNIA

6

| JOSEPH A. MAHER, | ) 1:09cv01887 DLB |
| | ) |
7
| | ) |
8
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S<br>) SOCIAL SECURITY COMPLAINT |
9
| | ) |
| v. | ) |
10
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
11
| of Social Security, | ) |
12
| | ) |
| Defendant. | ) |
13
| _____ | ) |

14

## BACKGROUND

15

16       Plaintiff Joseph A. Maher ("Plaintiff") seeks judicial review of a final decision of the

17 Commissioner of Social Security ("Commissioner") denying his application for disability

18 insurance benefits pursuant to Title II of the Social Security Act.  The matter is currently before

19 the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

20 Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

21

22       Plaintiff filed his application on July 8, 2004, alleging disability since September 20,

23 2003, due to a bulging disc and nerve damage in his left leg.  AR 74-76, 79-85.  After his

24 application was denied initially and on reconsideration, Plaintiff requested a hearing before an

25 Administrative Law Judge ("ALJ").  AR 54, 58, 67-71.  ALJ Edward Graham held a hearing on

26
27
_____

28
[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page
number.

May 18, 2006, and denied benefits on May 25, 2006.  AR 14-26, 263-286.  The Appeals Council denied review on October 11, 2006.  AR 3-6.

Plaintiff appealed the denial to the United States District Court for the Central District of California.  The Court reversed and remanded the action on October 29, 2007.  AR 409-416. Pursuant to the order of remand, the Appeals Council vacated the prior decision and remanded the case for further proceedings.  AR 405-408.

On May 15, 2009, ALJ Patricia Flierl held a second hearing.  AR 303-330.  On August 5, 2009, ALJ Flierl issued a decision denying benefits.  AR 290-302.

Hearing Testimony

ALJ Flierl held a hearing on May 15, 2009, in Fresno, California.  Plaintiff appeared with his attorney, Steven Rosales.  Vocational expert ("VE") Cheryl Chandler also appeared and testified.  AR 303.

At the beginning of the hearing, Plaintiff testified that he returned to work at his friend's truck repair business in September 2007.  AR 308.  He works full time but does not perform heavy lifting, kneeling or climbing.  AR 306-307.  Prior to that, he last worked in September 2003.  AR 308.

During that four year period, Plaintiff testified that he could not work because of a work-related injury to his back and knees.  AR 309.  He was also treated for depression during that time.  AR 308.  Plaintiff returned to work after his friend offered him a position that would allow him to do what he could.  AR 308.

During the time he could not work, Plaintiff "sat around in a lot of pain" and went to different doctors.  AR 309.  He also took a lot of medication and tried a lot of treatments, such as chiropractic treatment, epidural injections and trigger point injections.  Plaintiff became more depressed as he was not "getting the attention [he] needed."  Plaintiff lived with his mother during this time and did not do any chores because of his back.  He did not participate in any social activities because he was in pain all the time and couldn't enjoy himself.  AR 310-311.

Doctors have recommended surgery, but not all agreed.  AR 312.  Plaintiff currently takes Excedrin Back and Body and has not taken prescription medication since 2005 or 2006.  AR 315.

2

1    He explained that he did not return to work until 2007 because no one would hire him because he

2    was "a risk."  AR 316-317.

3           Prior to presenting the VE with hypothetical questions, the ALJ and Plaintiff's attorney

4    discussed the meaning of Dr. Goalwin's finding, in Worker's Compensation terms, that Plaintiff

5    had anywhere from a 20 to 50 percent reduction in various mental abilities.  AR 319.  Plaintiff's

6    attorney contends that a "slight" reduction is 20 percent and a "slight to moderate reduction is 50

7    percent, and that these percentages correspond to the percentage of the day."  In other words,

8    Plaintiff's attorney argued that a 20 percent reduction in the ability to maintain appropriate pace

9    meant that this person lost this ability for 20 percent of an eight hour day.  AR 320-322.  The

10   ALJ and the VE, however, believed that a 20 percent reduction translated into an ability that was

11   "20 percent of normal capacity."  AR 324-325.

12          For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age,

13   education and work history.  This person could lift 10 pounds frequently, 20 pounds

14   occasionally, stand and walk for two hours in an eight hour day and sit for up to six hours.  This

15   person could not climb, kneel, crouch or crawl but could occasionally stoop.  The VE testified

16   that this person could not perform Plaintiff's past work but could perform the world of unskilled,

17   sedentary work.  AR 326-327.  For example, Plaintiff could perform the position of accounting

18   clerk, telephone clerk and general clerk.  AR 328.

19          For the second hypothetical, the ALJ asked the VE to add a sit/stand option to the first

20   hypothetical.  The VE testified that this person could perform a reduced number of sedentary

21   positions, such hand packager, material handler and production worker.  AR 328.

22          For the third hypothetical, the ALJ asked the VE to assume that this person is unable to

23   concentrate in two hour increments.  The VE testified that this person could not perform any

24   work.  AR 328.

25          Medical Record[2]

26

27   _____

28          [2] Plaintiff's claims relate only to his mental impairments and therefore only pertinent portions of the medical
     record will be summarized.

1    On April 21, 2004, Plaintiff saw Julie Goalwin, Ph.D., for a psychological evaluation

2    related to his work injury.  Plaintiff did not seek psychological treatment prior to this

3    examination.  Since his physical injury, Plaintiff reported irritability, sleep disturbance, mood

4    swings that intensify with pain, weight gain, loss of interest in activities and loss of hope.  AR

5    168-170.

6    On mental status examination, Plaintiff's behavior was within normal limits but his

7    speech  was agitated and he was in apparent pain.  He appeared to be somewhat confused when

8    confronting test problems, though he was oriented to person, place and situation.  General

9    intellectual functioning was grossly preserved and insight and judgment were grossly intact.  AR

10   172.

11   Based on testing and her examination, Dr. Goalwin diagnosed adjustment disorder,

12   unspecified, and mental disorder affecting recovery from physical injury.  She did not believe

13   that Plaintiff could return to work because of his psychological condition, and noted that he was

14   "clearly struggling due to the effect of experiencing chronic pain."  AR 182.

15   On July 22, 2004, Plaintiff returned to Dr. Goalwin for his final psychological evaluation.

16   She administered numerous psychological tests and opined that his "global level of disability is

17   Slight."  Although Plaintiff's mental condition had improved since the initial evaluation, he

18   appeared "resolved to a lifetime of pain and as such appears to have lost motivation for moving

19   forward with work."  AR 150-153.

20   On mental status examination, Plaintiff was withdrawn and his grooming appeared

21   unkempt.  His behavior was within normal limits and he was oriented to person, place and

22   situation.  General intellectual functioning was grossly preserved and insight and judgment were

23   grossly intact.  Plaintiff was withdrawn and his mood was unvarying.  Recent and remote recall

24   were within normal limits and Plaintiff appeared to be of average intelligence.  AR 154-155.

25   Dr. Goalwin diagnosed adjustment disorder, unspecified, and chronic pain disorder

26   associated with both psychological factors and a general medical condition.  She believed that his

27   psychological injuries were related to his work accident.  Plaintiff was permanent and stationary

28   and Dr. Goalwin opined that he could work "on a psychological basis only," though he was

4

1   struggling to cope with the physical pain.  AR 164.  She also noted that Plaintiff could not return

2   to his former employment.  AR 152.

3        In rating his impairments, Dr. Goalwin opined that Plaintiff was very slightly limited in

4   following instructions and performing simple, repetitive tasks.  He was slightly impaired in his

5   ability to maintain a schedule and attendance and in his ability to influence people.  Plaintiff was

6   slightly to moderately limited in his ability to relate to other people beyond giving and receiving

7   instructions and in his ability to accept and carry out responsibility for direction, control and

8   planning.  Plaintiff was very slightly limited in his ability to make decisions without immediate

9   supervision.  AR 166-167.  She rated his overall disability as "slight," meaning that he has

10  "some handicap in performing activity precipitating the problem."  This translates into a 20

11  percent disability rating.  AR 167.

12       On December 3, 2004, State Agency physician Paul Balson, M.D., completed a Mental

13  Residual Functional Capacity Assessment form.  He opined that Plaintiff was "not significantly

14  limited" to "moderately limited" in his ability to carry out detailed instructions, maintain

15  attention and concentration for extended periods of time and complete a normal workday and

16  workweek without interruptions from psychologically based symptoms.  AR 234-236.  In rating

17  his functional limitations, Dr. Balson opined that Plaintiff had mild difficulties in maintaining

18  concentration, persistence or pace.  AR 248.  He noted that there was no objective evidence that

19  Plaintiff would be mentally unable to perform simple, repetitive tasks within a new workplace

20  and employer.  There was also no objective evidence of severe or extreme mental impairments in

21  activities of daily living.  AR 250.

22       On September 8, 2005, Plaintiff began receiving treatment from the Los Angeles County

23  Department of Mental Health.  Plaintiff complained of a lack of motivation, insomnia, overeating

24  and anxiety.  He also reported that he has had job offers but "can't seem to go."  He reported that

25  his prior psychiatric treatment was not very helpful, though he also said that he had taken Zoloft

26  and Paxil in the past and thought he felt better.  On mental status examination, Plaintiff was

27  disheveled and his speech was soft.  His intellectual functioning was unimpaired, though his

28  immediate and remote memory were impaired.  Plaintiff's mood was dysphoric, tearful, irritable

and anxious.  His affect was flat and his concentration was fragmented.  Plaintiff's judgments

were intact and his insight was adequate.  He displayed paranoid delusions and suspicious

ideations and was isolated and withdrawn.  The physician diagnosed Plaintiff with major

depression with psychotic features and recommended a medical evaluation and therapy.  The

physician also noted that Plaintiff was motivated to get better.  AR 485-490.

Plaintiff continued his treatment with Los Angeles County Mental Health through

September 2006.  AR 492-508.  As of September 14, 2006, Plaintiff still felt "about the same"

and was unhappy with his life situation and stressed over finances.  He was taking Zoloft and

Elavil and his response to medication was described as "fair."  AR 492.

On January 3, 2007, Plaintiff saw Nathan E. Lavid, M.D., for a psychiatric evaluation.

Plaintiff attributed his depression to a work-related injury and subsequent financial problems.  He

reported that his medications, Celexa and Seroquel, are of "some help."   On mental status

examination, Plaintiff was alert and oriented to person, place and time.  He had a full range of

affect and denied auditory or visual hallucinations.  Plaintiff displayed good immediate recall and

his thought processes were goal directed.  AR 557-559.

Dr. Lavid diagnosed mood disorder due to complaint of declining physical health, with

depressive features vs. depressive disorder, not otherwise specified.  He explained that the mental

status examination revealed no evidence of cognitive deficits, perceptual disturbances or

delusional disorders.  Plaintiff was fairly groomed and seemed capable of taking care of his own

needs.  He was able to focus attention adequately and could follow one and two part instructions.

He could adequately remember and complete simple tasks.  Based on Plaintiff's report of partial

response to treatment and his performance on the mental status examination, Dr. Levine believed

that Plaintiff had the ability to tolerate the stress inherent in the work environment, maintain

regular attendance and work without supervision.  Plaintiff could also manage his own funds.

His prognosis was fair.  AR 559-560.

On January 9, 2007, Marina Bhumitra, M.D., wrote a letter to the Department of Social

Services outlining Plaintiff's treatment.  Plaintiff began treating with the Department of Mental

Health on September 8, 2005, and his last appointment was on December 19, 2006.  His

medication was changed and increased during his treatment because of continuing depressive symptoms and anxiety.  Plaintiff began seeing Dr. Bhumitra on November 7, 2006, and she changed his medication again.  On December 19, 2006, his medication was reduced due to feelings of dizziness and sedation.  Plaintiff's current symptoms included dysphoric and anxious mood, loss of interest, fatigue, feelings of hopelessness, poor concentration and difficulty sleeping.  Plaintiff had no problems with memory, but his concentration was fragmented.  He was also withdrawn and isolated emotionally and physically and had difficulty with completing oral instructions.  Dr. Bhumitra diagnosed major depressive disorder and believed that his prognosis was poor.  AR 567-568.

On January 18, 2007, State Agency physician Dr. Balson completed a Mental Residual Functional Capacity Assessment form.  He opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions and in his ability to respond appropriately to changes in the work setting.  He noted, however, that pursuant to the consultive examiner and Plaintiff's treatment team, Plaintiff could perform simple, repetitive tasks.  AR 575-577.  In rating his functional limitations, Dr. Balson opined that Plaintiff had mild difficulties in maintaining social functioning and in maintaining concentration, persistence or pace.  AR 586.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of major depressive disorder, chronic lumbar back pain secondary to degenerative disc disease and disc bulges with radiculopathy, and bilateral knee arthritis.  Despite these impairments, Plaintiff retained the residual functional capacity ("RFC") to carry 20 pounds occasionally, 10 pounds frequently, stand and walk for two hours, sit for six hours and occasionally stoop.  Plaintiff could never climb, kneel, crouch or crawl.  With this RFC, Plaintiff could not perform his past work but could perform a significant number of positions in the national economy.  AR 295-301.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  E.g., Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  See Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found

that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his

disability; (2) has an impairment or a combination of impairments that is considered "severe"

(major depressive disorder, chronic lumbar back pain secondary to degenerative disc disease and

disc bulges with radiculopathy, and bilateral knee arthritis) based on the requirements in the

Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of

impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P,

Regulations No. 4; (4) cannot perform his past relevant work; but (5) retains the RFC to perform

a significant number of jobs.  AR 295-301.

Here, Plaintiff argues that the ALJ failed to (1) properly translate Dr. Goalwin's medical

opinion; and (2) impose any mental limitations.

## DISCUSSION

A.    Dr. Goalwin's Opinion

Plaintiff argues that the ALJ misunderstood Dr. Goalwin's opinion that he had a 20

percent disability in his mental performance.  He contends that a 20 percent disability rating is

inconsistent with work activity and points to the VE's testimony in support of his argument.

The terms employed in workers' compensation disability rating are not equivalent to

Social Security disability terminology.  *See Desrosiers v. Sec. of Health & Human Serv.*, 846

F.2d 573, 576 (9th Cir.1988).  Despite this, the ALJ may not ignore a doctor's medical opinion

because it was issued in a workers' compensation context.  The ALJ's opinion should reflect that

he properly considered the pertinent distinctions between the two schemes.  *See Desrosiers*, 846

F.2d at 576 ("It is clear from the record that the ALJ did not adequately consider this [categories

of work under social security disability scheme versus workers' compensation scheme]

distinction.")

In analyzing medical reports using workers' compensation standards, the ALJ "is entitled

to draw inferences 'logically flowing from the evidence.'" *Macri v. Chater*, 93 F.3d 540, 544

(9th Cir.1996) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982)).  For example, in

*Macri*, the Court held that the ALJ reasonably inferred that a worker who had "lost

approximately half of his pre-injury capacity for lifting, bending and stooping" under the

California workers' compensation guidelines, and whose prior job required lifting forty pounds occasionally, twenty-five pounds frequently, and constant bending, could perform light work under the Commissioner's regulations.  *Macri*, 93 F.3d at 543-544.

Here, the ALJ explained that Dr. Goalwin "gave very slight to moderate limitations in the claimant's work function, which indicates 20 percent. . ."  In turn, 20 percent means that the activity is tolerated with some handicap in performance.  AR 301.  The ALJ acknowledged Plaintiff's argument at the hearing, where he argued that 20 percent refers to 20 percent of the work day, but concluded that this argument was not valid.  AR 301.  The ALJ explained:

> California Workers' compensation code provides percentages for slight, moderate, severe and pronounced, but these are the "standard ratings" that are then inserted in a rating formula that includes other variables such as age, the job performed, etc., as well as the standard rating for the disability.  These variables are inserted in a rating formula that then equates to a certain level of permanent disability.  Most people with permanent disability can still work albeit not at the job in which they were injured.

AR 301.

The ALJ then concluded that the 20 percent disability rating was "consistent with Dr. Goalwin's recommendation for vocational rehabilitation, and her statement that the claimant is able to work."  AR 301.

In challenging this finding, Plaintiff uses the State of California's Schedule For Rating Permanent Disabilities.  He performs numerous calculations to arrive at a 20 percent disability rating and then, without support or explanation, concludes that this is inconsistent with work activity.[3]  Insofar as Plaintiff cites the VE testimony, the VE only testified that someone who could not concentrate in two hour increments could not perform work.  AR 328.  A 20 percent disability rating, or any other workers' compensation rating, does not automatically translate into a specific social security finding.  As the ALJ explained, a 20 percent disability rating means that the worker can perform the activity, though with some handicap.  Moreover, despite this rating, Dr. Goalwin believed that Plaintiff could perform work on a psychological basis.

---

[3] Plaintiff also contends that Dr. Goalwin used an outdated schedule and should have actually found that Plaintiff had a 30 percent disability rating.  However, it is not for this Court to go beyond the facts presented to the ALJ and perform independent calculations.

10

1    The ALJ's finding that Plaintiff was mentally able to work was therefore supported by

2 substantial evidence and was free of legal error.

3 B.    Plaintiff's Mental Impairments

4    Finally, Plaintiff argues the ALJ erred by finding his depression severe at step two but

5 failing to incorporate any related limitations in the RFC finding.

6    If an ALJ finds a severe impairment at step two, that impairment must be considered in

7 the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523, 416.923.  Here, the ALJ

8 found that Plaintiff's depression was a severe impairment.  Plaintiff argues that by definition, a

9 "severe" impairment causes significant limitation and must therefore impact the RFC finding.

10 The Ninth Circuit has flatly rejected this argument, however.  In *Bray v. Comm'r Soc. Sec.*, 554

11 *F.3d 1219 (9th Cir. 2009)*, the plaintiff made a similar argument, contending that a finding at step

12 two that her adjustment disorder was severe required a corresponding limitation in her RFC.  The

13 Court disagreed, stating, "Bray offers no authority to support the proposition that a severe mental

14 impairment must correspond to limitations on a claimant's ability to perform basic work

15 activities." *Bray,* 554 F.3d at 1128-1129.

16    Plaintiff does not challenge the RFC finding on any other basis and points to no evidence

17 to support an alternate RFC.  Accordingly, the ALJ's RFC is supported by substantial evidence

18 and free of legal error.

19                                    **CONCLUSION**

20    Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

21 evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court

22 DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social

23 Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael

24 J. Astrue, Commissioner of Social Security and against Plaintiff, Joseph A. Maher.

25    IT IS SO ORDERED.

26 **Dated:   December 3, 2010            /s/ Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE